**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
TARA NGUYEN,
*on behalf of herself and all others similarly situated*,

                Plaintiff,

                - against -

BOQUERIA UES LLC and BOQUERIA OPERATIONS LLC,

                Defendants.
---------------------------------------------------------x

Case No.

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff TARA NGUYEN (hereinafter "Plaintiff" or "Plaintiff NGUYEN"), on behalf of herself and all others similarly situated, by her undersigned attorneys, as for her Complaint against the Defendants BOQUERIA UES LLC ("Defendant UES" or "UES") and BOQUERIA OPERATIONS LLC ("Defendant OPERATIONS" or "OPERATIONS"), (collectively, "Defendants") alleges the following:

## NATURE OF ACTION

1.      This action is brought by Plaintiff NGUYEN on behalf of herself and all consumers in the United States who have received unsolicited and unconsented-to commercial text messages to their mobile phones from Defendants in violation of the Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

1

## JURISDICTION AND VENUE

2. The Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this action arises out of a violation of federal law - 7 U.S.C. § 227(b). *See Mims v. Arrow Fin. Serv.*, LLC 132 S. Ct. 740 (2012).

3. Venue is proper in this District under 28 U.S.C § 1391 because Defendants' violation of the Telephone Consumer Protection Act (TCPA) took place in this District, where Plaintiff NGUYEN received an automated text message to her phone.

## PARTIES

*Plaintiff*

4. Plaintiff NGUYEN resides in New York County.

*Defendants*

5. Defendants operate a chain of restaurants as a single integrated enterprise under the trade name "Boqueria" throughout the United States. Defendants own and operate Boqueria restaurants at the following locations:

   a. 53 West 19th Street, New York, NY 10011 (the "Flatiron" location);

   b. 1460 2nd Ave, New York, NY 10075 (the "Upper East Side" location);

   c. 171 Spring Street, New York, NY 10012 (the "SOHO" location);

   d. 260 West 40th Street, New York, NY 10018 (the "W40" location);

   e. 1837 M Street, NW, Washington, DC 20036 (the "DuPont" location);

   f. 777 9th St NW, Washington, DC 20001 (the "Penn Quarter" location); and

   g. 807 West Fulton Market, Chicago, IL 60607 (the "Fulton Market" location) (collectively, the "Restaurants")

6. The Restaurants are operated by Defendants as a single integrated enterprise. The Restaurants share common leadership and are marketed through a single integrated website: https://boqueriarestaurant.com/.

7. Defendant BOQUERIA UES LLC is a foreign limited liability company organized under the laws of Delaware, with its principal place of business located at 1460 2nd Ave, New York, NY 10075. Its registered agent and address for service of process is located at 150 West 28th Street, Suite 1403, New York, NY 10001.

8. Defendant BOQUERIA OPERATIONS LLC is a domestic limited liability company organized under the laws of New York, with its registered agent and address for service of process located at c/o Cutting Edge Management, 150 West 28th Street, Suite 1403, New York, NY 10001.

## FACTUAL ALLEGATIONS

**The Telephone Consumer Protection Act**

9. The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, was enacted by Congress in 1991 and is implemented by the Federal Communications Commission ("FCC"). The TCPA makes it "unlawful for any person… to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a paging service, cellular telephone service… or any service for which the called party is charged for the call…" 47 U.S.C. § 227(b)(1)(A)(iii).

10. "Prior express content" requires:

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the

3

> signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(8)

11. In addition, the written agreement must include a clear and conspicuous disclosure informing the signer that:

> By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice;

§ 64.1200(f)(8)(i)(A)

and

> The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

§ 64.1200(f)(8)(i)(B)

12. In its June 18, 2015 Declaratory Ruling and Order ("2015 TCPA Order"), the FCC reaffirmed its longstanding position that text messages qualify as "calls" under the TCPA: "… the Commission in 2003 determined that the TCPA applies to SMS texts. Thus, we find no uncertainty on this use…" ¶107.

**Defendants Violated the TCPA**

13. Prior to receiving a text message from Defendants, Plaintiff NGUYEN had dined at the Upper East Side location. At no point of her dining experience, Plaintiff did not give Defendants her contact information.

14. Plaintiff NGUYEN also never gave consent to receive automated text messages at any point. Even so, after dining at the Upper East Side location, on July 22, 2020, Plaintiff NGUYEN received the following text from Defendants promoting their products and services:



Hi! It's Erin from Boqueria. We're inviting our favorite guests to receive restaurant updates and exclusive offers. If you're in, text back, CHURROS.

If you ever need a break from delicious tapas, just tell us to PAUSE at any time.



15. Defendants sent similar unsolicited marketing texts using an automated telephone dialing system to other similarly situated persons, who likewise never consented to receiving them.

16. The text messages sent to Plaintiff NGUYEN were unwanted, annoying, and a nuisance. Plaintiff NGUYEN was expecting important messages but had to open and unlock her phone to view Defendants' invasive message. The message was disruptive and diminished Plaintiff's enjoyment of her phone. Such non-financial injuries are enough to support standing under Article III of the Constitution. *See Melito v. Experian Mktg. Solutions, Inc*., 923 F.3d 85, 88 (2nd Cir. 2019) ("The principal question we are tasked with deciding is whether Plaintiffs' receipt of the unsolicited text messages, sans any other injury, is sufficient to demonstrate injury-in-fact. We hold that it is."); *Van Patten v Vertical Fitness Group, LLC*, 847 F3d 1037(9th Cir. 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA need not allege any additional harm beyond the one Congress has identified.") (internal quotes and citation omitted).

17. The text Defendants sent to Plaintiff bears the telltale signs of having been generated by an autodialer. While the text was superficially personalized by being signed by an "Erin," the actual content of the text is generic and impersonal, which courts have recognized is probative of autodialing technology. *See Kazemi v. Payless Shoesource, Inc.*, 09-cv-5142, 2010 U.S. Dist. LEXIS 27666, at *6-7 (N.D. Cal. Mar. 12, 2010) ("plaintiff's description of the received messages as being … scripted in an impersonal manner and sent en masse supports a reasonable inference that the text messages were sent using an ATDS"); *Abbas v. Selling Source, LLC*, 09-cv-3413, 2009 U.S. Dist. LEXIS 116697, at *12 (N.D. Ill. Dec. 14, 2009) ("the text of the SMS message Abbas allegedly received clearly suggests that it is from an institutional sender without

any personalization"); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) ("The messages were advertisements written in an impersonal manner."); *Soular v. N. Tier Energy LP*, 15-cv-556, 2015 U.S. Dist. LEXIS 112294, at *8 (D. Minn. Aug. 25, 2015) ("there are additional facts alleged in the Complaint which indicate the use of an ATDS, such as the generic content of the message").

18.     Moreover, the text tells recipients that that they should respond "CHURROS" if they are interested in the offer and respond "PAUSE" if they are not. However, there would be no need to specify the precise verbiage through which to communicate with Defendants had it been a genuinely personal text. "Erin" would simply have stated "Let me know if you're interested." It is clear that "CHURROS" and "PAUSE" were the terms that a *computer* was programmed to recognize.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff NGUYEN seeks to represent a class consisting of:

> All persons in the United States who, beginning four years prior to the filing of this action, received unsolicited text messages to their cellular phones from Defendants ("the Class")

20.     The proposed Class excludes current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

21.     Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

22.     Class members are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained

through the appropriate discovery, Plaintiff believes that there are thousands of Class members, who may be identified from records maintained by Defendants or by their own record of text messages. These members may be notified of the pendency of this action by mail, or by advertisement, using the form of notice customarily used in class actions such as this.

23. Plaintiff's claims are typical of the claims of all Class members as all Class members are similarly affected by Defendants' wrongful conduct.

24. Plaintiff will fairly and adequately protect the interests of Class members because Plaintiff has no interests antagonistic to theirs. Plaintiff has retained experienced and competent counsel.

25. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for Class members to individually seek redress for the wrongful conduct alleged herein. If class treatment of these claims were not available, Defendants would likely be able to persist in their unlawful conduct with impunity.

26. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to Class members are:

   a. whether Defendants sent unsolicited marketing text messages to cellular phones belonging to Plaintiff and the Class;

   b. whether text recipients provided their prior express consent;

   c. whether Defendants employed autodialing technology;

   d. whether Defendants' conduct was intentional or negligent; and

      e. whether Plaintiff and Class members are entitled to damages for Defendants' conduct.

27. Class membership is readily ascertainable from electronic records.

28. The prosecution of this action as a class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

29. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein.

30. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants act or refuse to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

31. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

32. The prosecution of separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.

33. Defendants' conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227 *et seq*.

**(Brought on behalf of Plaintiff and the Class)**

34. Plaintiff NGUYEN realleges and incorporates herein by references the allegations contained in all preceding paragraphs and further alleges as follows:

35. Plaintiff NGUYEN brings this claim individually and on behalf of other Class members for Defendants' violations of the TCPA.

36. Defendants directly or vicariously violate the TCPA when it uses an automated telephone texting system to send unsolicited and unauthorized marketing texts to the cellular phones of Plaintiff and Class members.

37. The TCPA, 47 U.S.C. § 227(b)(3), provides:

**(1)** Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--

  **(A)** an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

  **(B)** an action to recover for actual monetary loss from such a violation, or to receive $ 500 in damages for each such violation, whichever is greater, or

  **(C)** both such actions.

38. Additionally, the TCPA provides that the Court may, at its discretion, treble the statutory damages if it finds that Defendants' violations are willful or knowing. 47 U.S.C. § 227(b)(3)

39. Defendants' violations of the TCPA were willful and knowing. Defendants would be liable to Plaintiff and the Class even if their actions were negligent.

40. Accordingly, Plaintiff and the Class are entitled to all damages referenced herein, attorney's fees, costs, treble damages, injunctive relief, and any other remedies allowed by the TCPA. Defendants should be enjoined from engaging in similar unlawful conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

(A) For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel;

(B) For an Order declaring that Defendants' conduct violates the TCPA;

(C) For an Order finding in favor of Plaintiff and Class members;

(D) For statutory or treble damages for each violation of the TCPA, as determined by the evidence presented at trial;

(E) For prejudgment interest on all amounts awarded;

(G) For an Order enjoining Defendants from further violations of the TCPA;

(H) For an Order awarding Plaintiff and Class members their reasonable attorney's fees and expenses and costs of suit; and

(I) For such other and further relief as the Court deems just and proper.

11

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rule of Civil Procedure, Plaintiff, on behalf of himself and Class members, demands a trial by jury on all questions of fact raised by this Complaint.

Dated: October 6, 2020

                                        Respectfully submitted,

                                        **LEE LITIGATION GROUP, PLLC**

                                        By: */s/ C.K. Lee*
                                              C.K. Lee, Esq.

                                        C.K. Lee (CL 4086)
                                        148 West 24th Street, Eighth Floor
                                        New York, NY 10011
                                        Tel.: 212-465-1188
                                        Fax: 212-465-1181
                                        *Attorneys for Plaintiff and the Class*